### SHAEFFER-WEAVER CO v MALLONN

Ohio Appeals, 5th Dist, Stark Co

Decided Feb 8, 1933

Black, McCuskey, Ruff & Souers, Canton, for plaintiff in error.

Herbruck, Shetler, Melchoir & Roach, Canton, for defendant in error.

GARVER, PJ.

The jury returned a verdict in favor of plaintiff in the sum of $3,480. Defendant, the Shaeffer-Weaver Company, prosecutes error. The petition in error alleges eleven grounds of error. In the brief the first one argued is that the trial court erred in overruling the motion made by the defendant at the close of plaintiff's testimony, which motion was renewed at the close of all the testimony.

The evidence shows that this paved highway is about 40 or 44 feet wide, having four lanes of traffic; that the truck was parked on the west side of said highway with no red tail-light burning at the time, as testified to by four witnesses; that plaintiff was driving his automobile with the dimmer lights burning, which lights enabled the driver to see 200 feet straight ahead. Plaintiff testified: "I was driving about thirty-five miles per hour. I passed a big truck which was on the west side of the road, hauling cars towards Canton, and I turned into the middle lane and drove along on that and all at once a couple of cars came from Canton and they came pretty close on the center line and I said to myself, 'I better get over. They are coming too close.' And while I turned over to the right I saw this truck standing with no lights about thirty or thirty-five feet ahead of me and I tried to turn away to the left and I put the brakes on, but my right wheel hit the left of the truck. I was driving straight ahead and looking straight ahead and over to the left and watching those fellows coming towards me, and as soon as I turned my wheel to the right, I saw the truck. There are trees right there and it is an awful dark spot." No witness disputes this part of his evidence.

After the overruling of the first motion, the driver of defendant's truck testified: "The lights on the truck were Prestolite acetylene lights. The connecting rods of the truck burned out and I pulled over to the right hand side of the curb and stopped. A bus came along. I hailed it, got on the bus and came to Canton. I went in front of the truck to get the bus and the headlights were lit. I did not look to see if the tail-light was burning. Presto lights are not very bright. They are just natural." No witnesses disputed this part of his testimony, except there was some evidence that the headlights of the truck were not burning.

The case of **Tresise v Ashdown, Admr., 118 Oh St, 307, 160 NE, 898, 58 A.L.R., 1476,** decided in 1928, holds that operation of a motor vehicle at such a rate of speed that the driver cannot stop within the distance that an obstruction in the highway could be seen by his own headlights is not negligence per se. The opinion states that decisions from some other states challenge this view, and then cites numerous decisions from other states which support the view. Nearly all of the decisions cited by defendant's brief upon this proposition are from states not mentioned in said opinion as supporting this view.

In 1929 the General Assembly inserted in §12603, GC, these words: "And no person shall drive any motor vehicle in and upon any public road or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead." Defendant contends that the plaintiff, by reason of the fact that he collided with defendant's truck, conclusively proves that he was driving his automobile at a greater speed than permitted him to stop within the assured clear distance ahead.

Before the argument the court gave defendant's request to charge as follows:

"You are instructed that §6310-1 GC, now in force and effect in the state of Ohio, provides in part as follows:

" 'Every motor vehicle * * * driven upon the public highways of the state, during the period from one-half hour after sunset to one-half hour before sunrise, and whenever fog renders it impossible to see at least two hundred feet ahead of such motor ve-

hicle, shall display, while running, at least two lighted lamps on the forward part of such vehicle, one on each side and approximately of equal candle power; * * * which light or lights shall in clear weather be visible at least two hundred feet in the direction in which such motor vehicle is proceeding. Every motor vehicle so operated shall display a red light from behind, * * *

" 'Whenever there is not sufficient light within the limits of the traveled portion of the highway to make all vehicles, persons, or substantial objects clearly visible within a distance of at least two hundred feet, the forward lights which a motor vehicle * * * is required to display, shall, when the motor vehicle is in motion, throw sufficient light ahead to show any person, vehicle, or substantial object upon the roadway straight ahead of the motor vehicle for a distance of at least two hundred feet * * *.'

"You are hereby further instructed that if you find from a preponderance of the evidence submitted to you in this case that the plaintiff was guilty of violating the provisions of the statute quoted above, that such violation by the plaintiff constituted negligence in and of itself, and if you further find from the evidence in this case, by the preponderance aforesaid, that such negligence directly and proximately caused or contributed to causing in the slightest degree, the loss or damage of which the plaintiff complains, then the plaintiff cannot recover and your verdict must be for the defendant."

The jury, having returned a verdict for plaintiff, must have found from the evidence that the lights on plaintiff's automobile enabled him to see any substantial object upon the roadway straight ahead of his automobile for a distance of at least 200 feet, or, if they failed to so show, then that such failure to so show did not directly and proximately cause or contribute in the slightest degree to the damages complained of.

When plaintiff was driving on the second lane east of the west curb, which lane is hereinafter referred to as the second lane, he was not required by the statute to have lights illuminating the entire width of the road. If they illuminated said second lane, upon which he was then driving, for at least 200 feet in advance of his automobile, that would be a compliance with §6310-1, GC.

When the General Assembly enacted the last amendment to §12603, GC (113 Ohio Laws, 283), they surely could not have intended the words "assured clear distance ahead" to refer to the entire width of a 40 or 44-foot road, especially when driving at night. Had the plaintiff been driving in the day time, on said second lane, the assured clear distance ahead would certainly refer to said second lane, and any substantial object on the west lane, or the two east lanes, would not be within his assured clear distance ahead and would not require him to slacken his speed. When the plaintiff on that fatal night was within a few feet of the automobiles coming from Canton, there was no cear distance ahead of him on the two east lanes of the road, and, if they had not come so close to the center line, and caused plaintiff to turn to the right—and he had continued driving on said second lane until he came within a few feet of the truck,—there would have been no clear distance ahead of him on the east lane, yet he could have continued on said second lane and passed the truck in safety, without hitting it and perhaps without seeing it, because in such case the clear distance ahead of him on said second lane would have been more than 200 feet ahead of him.

When the two automobiles from Canton were coming so close to the second lane that he deemed it prudent to turn over to the right, and after so turning the truck suddenly loomed up about 30 or 35 feet ahead of him, he certainly could not be charged with a violation of the statute.

When he was crowded to the right and coud see no red light on the west lane, and nothing to indicate that there was a truck on said west lane, he had a right to presume and to act on the presumption that said west lane was safe for ordinary travel; that other drivers on said west lane were complying with the law; and that there would be no extraordinary danger or obstruction ahead of him on said west lane. He was driving 35 miles per hour, or about 51 feet per second, and it would only be about two-thirds of a second from the time he first saw the truck until the collision. It would take a part of that time to put his foot on the brake in an attempt to stop the car, and, while the evidence shows that he could stop the car in a distance of three or four car lengths, being 51 to 68 feet, it would be impossible for him to stop in the short distance remaining after he had placed his foot upon the brake.

The evidence convinces us that plaintiff's lights enabled him to see more than 200 feet straight ahead when he was driving 35 miles per hour, and that, while driving

at that speed, he could stop his car in the distance of three or four car lengths, or from 51 to 68 feet. Therefore, we conclude that plaintiff was driving his automobile at a speed that permitted him to stop within the assured clear distance straight ahead of his automobile and hence he was not violating the above-quoted amended §12603 GC.

The jury may have found that the proximate cause of the injury was the parking of defendant's truck on the west side of the road, by its driver, or the failure to have the red light on the rear of the truck burning, as required by statute. The trial court ruled correcty in refusing to direct a verdict for defendant and in submitting the case to the jury.

The second ground of error argued in defendant's brief is that the court erred in admitting evidence. In the cross-examination of the driver of defendant's truck, plaintiff, over the objection and exception of defendant, drew from said driver the fact that there was a street named 38th street, turning off to the right about half a block ahead, and that the reason that he did not drive into said street was that by driving the truck any distance at all in that condition, with the connecting rods of the truck burnt out, the connecting rods might go through the motor and ruin the truck completely.

"Q. So in order to protect this truck you left it parked on the public highway and didn't drive it in this street 20 or 30 feet away? A. The chances are you wouldn't have got that far with it.

"Q. You didn't try did you? A. I did not.

"Q. And the reason why you didn't try was you was afraid that you would damage the truck? A. I did try to drive the truck I would say within a half a block with the bearings lose, and if I had drove it any further I knew the truck would break down completely. So why ruin the truck?"

By reference to the pleadings set forth in the beginning of this opinion, it is apparent that the evidence objected to was admissible upon the question of defendant's negligence. The latitude of cross-examination rests within the sound discretion of the trial court and there was no abuse of discretion in this instance.

The third ground of error argued in defendant's brief is that the judgment is contrary to the weight of the evidence, is excessive, and was given as a result of passion and prejudice. A reviewing court is not authorized to set aside the verdict of the jury on the ground that their finding is against the weight of the evidence, unless upon a careful review of all the evidence, such court is fully satisfied that the verdict is clearly against the weight of the evidence. The jury saw and heard the witnesses, observed their demeanor upon the stand, passed upon their interest or lack of interest in the case, the reasonableness of the facts to which they testified, and gave such credibility to each witness as their judgment dictated. Their finding in favor of plaintiff, and the judgment thereon by the Common Pleas Court, will not be reversed by us upon the weight of the evidence.

The record shows that the reasonable market value of plaintiff's automobile before the collision was $1,100 or $1,200, and its value after the collision was $50. The plaintiff received numerous cuts, the end of his collar bone was dislocated, and two ribs were broken. He was confined in the hospital one week, and after his return home he was under the care of his physician for about six weeks and was unable to work full time for a period of six weeks. His doctor's charge was $75. The amount found by the jury was reasonable and no more than plaintiff was entitled to..

There is no prejudicial error in the charge of the court, or elsewhere in the record. Therefore, the judgment of the Court of Common Pleas is hereby affirmed.

SHERICK and LEMERT, JJ, concur.